**CITY OF DAYTON, Appellee,**

v.

**DRAKE, Appellant.**

[Cite as *Dayton v. Drake* (1990), 69 Ohio App.3d 180.]

Court of Appeals of Ohio,
Montgomery County.

No. 11815.

Decided Aug. 21, 1990.

*Vincent P. Popp,* Chief Prosecutor, and *John J. Scaccia,* Assistant Prosecutor, for appellee.

*Thomas Paul Drake, pro se.*

BROGAN, Judge.

Appellant, Thomas Paul Drake, appeals from the judgment of the trial court whereby he was found guilty of criminal trespass in violation of Dayton R.C.G.O. 133.05.

On July 7, 1989, appellant entered onto the property of the Dayton Women's Center, 1829 North Main Street, Dayton, Ohio, with the intent to prevent the performance of abortions inside the clinic located on the premises. Appellant and a group of others obstructed all entrances to the building and although he was repeatedly requested to quit the premises, appellant did not. The Dayton Police arrived and arrested appellant, who was charged with criminal trespass on July 10, 1989.

Appellant pleaded not guilty to the charge against him and on July 11, 1989, his counsel entered an appearance and requested a pretrial conference.

On July 25, 1989, the trial court journalized the following entry: "Pretrial. Set for Jury trial. Bond continued." On July 26, 1989, notice of jury trial on August 10, 1989 was sent. On July 28, 1989, the trial court, noting appellant's failure to file a written request for a jury trial, journalized its intent to amend the July 26 notice. Amended notice of "court trial" on the date previously selected was sent on July 28, 1989. Both notices contained the following instruction: "No continuance will be considered unless requested in writing filed not less than forty-eight hours before the time set for trial."

On August 7, 1989, appellant filed his trial brief; the brief was not signed by appellant's counsel but by appellant himself. In addition to his brief, appellant filed a lengthy article regarding the defense of necessity.

Appellee filed a reply brief and a motion in limine on August 8, 1989. In its motion, appellee requested that the trial court exclude the following from evidence: "(1) that abortion is the taking of a human life and (2) that there was, therefore, a necessity for defendant to enter and remain on the proeprty [*sic*] of another in order to save such a life."

On August 10, 1989, the date of the trial, appellant's counsel appeared and filed a motion to withdraw upon appellant's request to proceed *pro se*. The trial court granted the motion and the matter proceeded to a bench trial. The trial court granted appellee's motion in limine and, after hearing the evidence, found appellant guilty. Appellant was sentenced to thirty days' incarceration, with twenty days suspended, one year unsupervised probation and court costs suspended. It is from this judgment that appellant now appeals.

■ In his first assignment of error, appellant contends that his constitutional right to a jury trial was violated. He argues that because he did not affirmatively waive this right, he was entitled to present his case to a jury. Both the Criminal Rules and relevant case law indicate that this assignment of error is without merit.

Crim.R. 23(A) provides in pertinent part:

"In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. *Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto.*" (Emphasis added.)

Appellant was charged with criminal trespass, a fourth degree misdemeanor carrying a maximum penalty of thirty days' incarceration and/or a $250 fine. (See Dayton R.C.G.O. 133.05 and 130.99.) Crim.R. 2 discloses that a petty offense is any misdemeanor other than a serious offense and that a serious offense is one for which the penalty includes more than six months of confinement. Therefore, it is apparent that the crime with which appellant was charged constitutes a petty offense.

██ It follows, pursuant to Crim.R. 23, that contrary to appellant's contention, unless the record reflects a demand for a jury trial, appellant has waived this right. Our review of the record reveals that no jury demand was filed.

Quoting Crim.R. 1(B), the Ohio Supreme Court explained in *Tallmadge v. DeGraft–Biney* (1988), 39 Ohio St.3d 300, 301, 530 N.E.2d 1310, 1311:

" 'These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed and applied to secure the fair, impartial, speedy, and sure administration of justice, simplicity in procedure, and the elimination of unjustifiable expense and delay.' "

Appellant claims that he was entitled to a jury trial due to his reliance upon the initial notice of trial, sent on July 26, 1989, indicating that a jury trial was scheduled. However, only two days later, an amendatory notice was sent, indicating that a trial to the court would be held. We note that at the time these notices were sent, appellant was represented by legal counsel. We presume that counsel is aware of the statutory requirements regarding the necessity of a demand for jury trial in cases of petty offense. If the initial notice of a "jury trial" was misleading, the subsequent notice of a "court trial" should have dispelled any doubts about the nature of the proceeding. If appellant desired a jury trial, he had ample time under the dictates of Crim.R. 23 to file his demand following the dissemination of the second notice dated July 28, 1989. His failure to do so constituted a waiver of the right now claimed to be violated.

For these reasons, appellant's first assignment of error is overruled.

██ Appellant's second, third and fourth assignments of error are combined for discussion as appellant essentially asserts a single argument,

namely, that the trial court erred in failing to permit him to present evidence of the defense of necessity.

Recently, this court had occasion to review an issue identical to the one presently under consideration. In *Kettering v. Berry* (1990), 57 Ohio App.3d 66, 567 N.E.2d 316, we summarized the case as follows:

"In this case we are asked to determine the extent to which the affirmative defense of 'necessity' applies to justify or excuse acts of criminal trespass committed by defendants-appellants when they entered and occupied an abortion clinic. The trial court held that the defense had no application and limited and excluded evidence and arguments relating to the affirmative defense. Appellants now argue that their purposes were relevant to the jury's determination and that the trial court erred in its rulings. We agree with the trial court's determination and will affirm appellants' conviction below." *Id.* at 66, 567 N.E.2d at 318.

The fact that *Berry* involved a jury trial while appellant had a bench trial renders *Berry* no less authoritative; the *Berry* case controls the issue of the applicability of the necessity defense. Therefore, pursuant to the holding and the rationale of *Berry* (*id.* at 67–69, 567 N.E.2d at 319–320), appellant's second, third and fourth assignments of error are overruled.

■ In his fifth assignment of error, appellant asserts that his arrest and conviction of criminal trespass unconstitutionally interfered with his religious freedom.

We find Judge Dimond's concurring opinion in *Cleveland v. Municipality of Anchorage* (Alaska 1981), 631 P.2d 1073, 1083, cited by appellee, to be instructive. Pertinent portions of the opinion are as follows:

" * * * Public policy prohibits applying the defense of necessity to exonerate a person of liability for his or her legal conduct engaged in as a form of civil disobedience, no matter how laudable the person's goals may be. Thus, the defense of necessity has been ruled unavailable in other prosecutions for trespass at abortion clinics * * *. [Citations omitted.] The court in *United States v. Berrigan* [ (D.Md.1968), 283 F.Supp. 336, 339], aptly expressed this rationale:

" 'No civilized nation can endure where a citizen can select what law he would obey because of his moral or religious belief. It matters not how worthy his motives may be. It is axiomatic that chaos would exist if an individual were permitted to impose his beliefs upon others and invoke justification in a court to excuse his transgression of a duly-enacted law.'

"A person who chooses to disobey a law because he or she believes it is necessary to do so in pursuit of a moral cause must accept responsibility for

the illegality of that conduct. This was particularly well stated by Judge Soboloff in *United States v. Moylan,* 417 F.2d 1002, 1008 (4th Cir.1969):

" 'From the earliest times when man chose to guide his relations with fellow men by allegiance to the rule of law rather than force, he has been faced with the problem how best to deal with the individual in society who through moral conviction concluded that a law with which he was confronted was unjust and therefore must not be followed. Faced with the stark reality of injustice, men of sensitive conscience and great intellect have sometimes found only one morally justified path, and that path led them inevitably into conflict with established authority and its laws. Among philosophers and religionists throughout the ages there has been an incessant stream of discussion as to when, if at all, civil disobedience, whether by passive refusal to obey a law or by its active breach, is morally justified. However, they have been in general agreement that while in restricted circumstances a morally motivated act contrary to law may be ethically justified, the action may be non-violent and the actor must accept the penalty for his action. In other words, it is commonly conceded that the exercise of a moral judgment based upon individual standards does not carry with it legal justification or immunity from punishment for breach of the law.' " *Cleveland v. Municipality of Anchorage, supra,* at 1084.

We find, upon the facts of this case, that appellant's freedom to worship as he sees fit was not restricted. Rather, appellant was successful in following the avowed dictates of his conscience. However, in doing so, he committed a criminal trespass and now "must accept the penalty for his action."

Appellant's fifth assignment of error is overruled. The judgment of the trial court will be affirmed.

*Judgment affirmed.*

FAIN and GRADY, JJ., concur.